UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CYNTHIA WALDRON,

              Plaintiff,

Case No. 4:06-CV-52

v.

Hon. Richard Alan Enslen

LIFE CARE CENTERS OF
AMERICA, INC.,

**OPINION**

              Defendant.
_____/

      This matter is before the Court on Defendant Life Care Centers of America, Inc.'s Motion

for Summary Judgment.  The Motion has been fully briefed, and upon review of such briefing, the

Court determines that oral argument is unnecessary.  *See* W.D. Mich. L. Civ. R. 7.2(d).

      For the reasons which follow, the Motion will be granted.

**BACKGROUND**

      This is a diversity suit between a Michigan Plaintiff, Cynthia Waldron, and a Tennessee

Defendant (Life Care Centers of America, Inc.).  Plaintiff has sued on two counts: (1) for violation

of Michigan's Whistleblowers' Protection Act, Mich. Comp. Laws § 15.361 *et seq*.  ("WPA")

(Compl. 4-5); and (2) for discharge in violation of public policy.

      The discharge, if such occurred, happened on February 3, 2006.[1]  (Waldron Dep. 106-07.)

The discharge occurred only after Plaintiff told her nursing supervisor, in the context of a meeting

_____

[1]The testimony indicates that Waldron's supervisor asserted that Waldron quit upon
receiving news that she was being disciplined for misconduct. (*See also* Waldron Aff. ¶¶ 27-28.)
However, Waldron testified that she was fired by the employer.  (*Id.*)

in which Waldron was advised of her suspension for misconduct, that she would report the Company's Plainwell nursing home facility to the State of Michigan for what she believed was illegal conduct.[2]  (Waldron Aff. ¶ 25.)  Plaintiff's threats to call the State relate to the nursing home facility's handling of an event on January 31, 2006, which is described below.

According to Waldron, she was at the room of an elderly gentlemen who was having difficulty breathing because he was in need of medication, when the man's wife, also a resident, gestured to Waldron (by use of a closed fist) that her husband had hit her in the face.  (Waldron Dep. 41, 44, 47-51 .) Waldron removed the women, who was uninjured, to the activities area of the facility and contacted the women's daughter; the daughter  told Waldron that her mother most likely needed her anti-anxiety medication (Zanax) and that Waldron should interview the woman's husband.  (*Id.*) Waldron interviewed the husband with the woman present at which time both denied that there was any abuse.  (*Id.*)  The women also denied that she had reported any abuse to Waldron.  (*Id.*)  This information was recorded in the woman's medical charts by Waldron.  (Pl.'s Resp., Ex. 6.)

According to Waldron, her accurate charting of the incident contradicted the instructions of her supervisor.  Waldron's supervisor had told her to chart what she regarded as inaccurate information concerning the incident and, when she refused, she was told to leave a gap in the chart so that the supervisor could complete that part of the charting herself.[3]  (Waldron Dep. 78-79.)

---

[2]Waldron does not dispute that she made some mistakes in her nursing practice (such as leaving the medicine cart unattended at times), but views the suspension/firing as pretextual given the timing, given that some of the incidents were concocted, and given that other nurses were not disciplined for gross violations.  (*See* Pl.'s Resp. 6-8; Waldron Dep. 89-98.)

[3]Waldron testified that she was given a card by her supervisor that told her what to record and the card was inaccurate, according to her, because it referred to a "confrontation" between residents rather than "abuse."  (Waldron Dep. 61-62.)  Waldron did not retain the card, however. (*Id.*)

Waldron did not leave a gap and the supervisor's comments were recorded later in the medical chart. (*See* M. Baird Dep. 57; Pl.'s Resp., Ex. 6.)

### SUMMARY JUDGMENT STANDARDS

Defendant's Motion is brought pursuant to Federal Rule of Civil Procedure 56.  Under the language of Rule 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  The initial burden is on the movant to specify the basis upon which summary judgment should be granted and to identify portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The burden then shifts to the non-movant to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  If, after adequate time for discovery on material matters at issue, the non-movant fails to make a showing sufficient to establish the existence of a material disputed fact, summary judgment is appropriate.  *Celotex Corp.*, 477 U.S. at 323.

In assessing evidence, credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions.  *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994).  The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor.  *Celotex Corp.*, 477 U.S. at 323 (quoting *Anderson*, 477 U.S. at 255).  The factual record presented must be interpreted in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## LEGAL ANALYSIS

### 1.  WPA Claim

The WPA provision allegedly violated by Defendant states as follows:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

Mich. Comp. Laws § 15.362.  This statute includes protection for those who report or are about to report "a suspected violation of a law . . . ."

Defendant argues that the conduct Plaintiff threatened to report does not fall within this section because there is no Michigan statute or regulation which Defendant would have violated, assuming Plaintiff's allegations are true.  Plaintiff, on the other hand, argues that the term "suspected violations of a law" must cover incidents in which an employee has a subjective belief that the conduct in question is in violation of the law, whether or not it is.  In favor of this proposition, Plaintiff cites the case of *Melchi v. Burns Int'l Security Serv., Inc.*, 597 F. Supp. 575, 583 (E.D. Mich. 1984).  *Melchi* did allow potential liability based upon a plaintiff's subjective understanding of complex nuclear energy laws and regulations.

Plaintiff's construction of this language, that the word "suspected" modifies both the words "violation" and "law," as opposed to the first word "violation," is not supported by a correct reading of the text.  The term "suspected" is in the text so that persons who become aware of allegations or possible conditions which, if true, would amount to violations of the law, are protected from

4

retaliation even if the allegation or conditions prove untrue.  The word "suspected" does not modify

the word "law," notwithstanding the reasoning in *Melchi*, which may have been persuasive in that

context, but is not persuasive in this one.  *See also Hedglin v. City of Willmar*, 582 N.W.2d 897, 902

(Minn. 1998) (rejecting similar construction under Minnesota law). Were Plaintiff's reading of the

statute correct, then any employee could attach importance to any matter arising from a frivolous

construction of the law and could insist that negative action taken due to the announcement of

frivolous concerns warrants statutory protection.  Neither the statutory language nor commonsense

dictate any such reading of the statute.  The protections of the Act do not follow complainers into

a den of frivolous complaints based upon subjective misunderstandings of statutes and regulations.

To assume otherwise would be to leave behind not only the statutory text, but also the constraints

of due process of the law, which are uncomfortable with deprivations of property based upon the

subjective misunderstandings of the law by one's adversary.

So assuming the truth of Plaintiff's factual allegations, what Michigan statute or regulation

was violated by Defendant's conduct?  Plaintiff admits that destroying incident reports, which are

stored electronically, is not a violation of a Michigan statute or regulation, nor is "leaving a gap" in

a medical record to insert information later.  Plaintiff does cite two Michigan statutes as instances

of legal violations–Mich. Comp. Laws § 333.20175(1) and Mich. Comp. Laws § 750.492a(1). The

first cited statute requires that "[a] health facility . . . shall keep and maintain a record for each

patient, include a full and complete record of . . . observations made . . . ."  The second statute

provides that a "hospital" shall "assure that records regarding patient observations and conditions

not be altered or destroyed."

Regarding the first statute, the statute does not suggest that a medical record of a nursing home would be considered incomplete if information which was not typically recorded in a medical record (an incident report about an incident which apparently did not occur) was not recorded in the record. Further, the theory that information should have been so recorded is inconsistent with Plaintiff's own testimony. Plaintiff testified that the incident report was not part of the medical record. (Waldron Dep. 31-32.)

Regarding the second statute, the statute is applicable to a "hospital" and not to a nursing home such as that operated by Defendant. Further, even assuming it applied to a nursing home, the record does not support that a patient record was ever altered or destroyed by the nursing home in connection with this case.

Accordingly, Defendant is entitled to summary judgment as to Count One.

**2. Public Policy Claim**

The above disposition makes simple the disposition of Count Two. The Michigan Supreme Court has held that when a worker has the protection of a statute like the WPA, the terms of such statute, rather than the common law and vague notion of "public policy" should dictate the terms of the protection. *See Dudewicz v. Norris-Schmid*, 503 N.W.2d 645, 650 (1993) (citing with approval *Ohlsen v. DST Indus., Inc.*, 314 N.W.2d 699, 701 (Mich. Ct. App. 1981)); *see also Scott v. Total Renal Care, Inc.*, 194 Fed. Appx. 292 (6th Cir. Sept. 5, 2006). Because the terms of the WPA protect Plaintiff and preempt the application of the public policy doctrine, Plaintiff cannot claim relief under the public policy doctrine.

Furthermore, even assuming that the public policy doctrine operated in this instance, the Court does not accept that the public policy of protecting Plaintiff's pre-suit conduct is strong enough to support liability under that doctrine.

Therefore, Defendant will be granted summary judgment as to Count Two.

## CONCLUSION

Judgment shall enter granting Defendant's Motion for Summary Judgment and dismissing Plaintiff's claims with prejudice.

Dated in Kalamazoo, MI:                                     /s/Richard Alan Enslen
March 19, 2007                                              Richard Alan Enslen
                                                           Senior United States District Judge